And here on behalf of the warden is Mr. Houts, and Mr. Pelletieri is here for the Department of Justice, and Mr. Hahn, you may begin. Thank you. May it please the court, counsel. I'll begin with the jurisdictional question. We maintain that the amethyst's position is well taken, that there is Article III subject matter jurisdiction here for Mr. Moody's 2241. We would point that there is an injury that he's identified, which would be his imminent execution. It's fairly traceable to the conduct about which he complains, and it is likely to be redressed by court action. Unless this court has any questions regarding that particular issue, I'll move on to the merits. With regard to that, I think it would be best to address the second claim first. And the second claim is, or claim two as it's identified in the briefing, is that Mr. Moody is currently a federal inmate serving his sentence in a designated state facility. And that that sentence has not expired, given that it is seven life sentences and 400 years, and that until it expires, the state of Alabama's judgment cannot become effective. That first requires determining whether or not Mr. Moody is a federal prisoner. We would assert that he is. And the reason we would assert that he is, is in their answer, in her answer, Warden Stewart has admitted that Mr. Moody is in the legal custody of the United States of America. It's been the law since 1922, when the Supreme Court returned its opinion in Ponzi versus Fessenden, that if there's any dispute over whether an individual should be in the custody of either the state or the federal government, that that's a dispute between the two sovereigns. And I don't see any cases, we don't have much of that on circuit authority, but we do have some circuit authority that's binding on us. I don't see any circuits that have ruled otherwise. How are you going to get around that? Yes, Your Honor. Actually, Ponzi helps us. And they tell us to embrace the immutable facts that we cannot change when we're in trial. I will embrace those facts here. Ponzi v. Fessenden talks about how the Attorney General of the United States, there is no statutory or otherwise constitutional authority explicitly permitting a transfer of a federal prisoner to a state for purposes of prosecution and sentencing. But there's a statute. I mean, if you look at subsection B of section 3621, it gives the Bureau the authority for a prisoner to serve as federal sentence in any suitable prison facility, whether maintained by the federal government or otherwise. And that again helps us, Your Honor. Right now, Mr. Moody is a federal inmate. He began his sentence commenced as soon as he was sentenced to Marion. He arrived at Marion. In all of the cases that talk about the order in which the execution of the sentence may have, and I'll come back to Ponzi, but I want to get to the point regarding that he is, in fact, a federal inmate. 3585A provides a sentence to a term of imprisonment commences on the date the defendant's received in custody for purposes of serving that federal sentence. The question here becomes whether or not when a duly imposed sentence imposed by a federal judicial officer, a judge, which was immediately executed and commenced service of, can be interrupted by someone in the federal executive branch. And here we would submit that Mr. Moody was and is in the custody of the United States government. And no aspect of that changes. The fact that there's statutory authority for him to be serving his sentence in a state facility doesn't change the fact that he's serving that federal sentence. Can the rights of one sovereignty over another be waived? They cannot. We would submit, Your Honor, when you look at In Re Libera Tor, which is a Second Circuit case, admittedly we've got a lot of case law on these issues, but the Second Circuit case of In Re Libera Tor has to do with that concern to civil contempt. There was a state inmate who was convicted, and then he was brought in by a grand jury to present fingerprint exemplars and handwriting exemplars. He refused. A federal district court judge held him in contempt and said, well, you're being held in civil contempt to cure your contempt, and we are going to surrender you to the Attorney General of the United States until you agree to comply, and we will recommend that you serve that sentence in state custody right now. Maybe I read that case differently, but I thought what the court said in that case was that a federal district court lacks the authority to modify a state sentence imposed by a separate sovereignty. Did I read that incorrectly? You did not, Your Honor, but what it also talks about is interruption, and that's the key here is an interruption. Once a sentence has begun to be served, and they talked about a Connecticut law that's almost identical to 3585, which says once a federal sentence commences to be served, it must continue absent good time, work time credit, and in this case. So you can never ever agree to have a federal sentence interrupted notwithstanding what Ponzi says? Well, again, I don't think that Ponzi says that a federal sentence can be interrupted. I think what Ponzi says is, and in Ponzi, this preceded the advent of turning the person over to the actual physical custody of a state official, and Ponzi was transported by marshals, and they maintained custody of him, and they watched over him at the local jail, but what happened with Ponzi was he was temporarily transferred for purposes only of trial and sentencing but not for execution of that sentence, and they said to the extent that there will be any difficulty with regard to executing the second sentence, it can go second, and that is probably an acknowledgment of the fact that you cannot interrupt a federal sentence. What we're talking about is can the United States government through the executive branch, can they say a person was just sentenced to 20 years, and the district court orders that person to be remanded to the custody of the attorney general to be turned over to the Bureau of Prisons to serve that 20-year sentence, and the United States attorney says, Your Honor, we don't want to take him. We don't want to take him. Do they get to do that? He has commenced serving that sentence once the judge has ordered him into the custody of the attorney general. But that's not this case. This is not a case where the federal government says we don't want to take him. It's where another sovereign has pending criminal charges, and the government sends him over to – you don't disagree that they could send him over to be tried, right? Correct. Ponzi says that, and there's no dispute there, Your Honor. Okay. And why can't the federal government decide that he is going to serve the state sentence first and then go and finish? Well, Your Honor – The sentence. Yes, Your Honor. And the reason for that is that he has been – okay. So I'd like to note that with regard to the sentence, he is serving the sentence. When you transfer someone on a writ ad prosequendum, they do not – you do not transfer the legal jurisdiction. And here we don't actually have an agreement that says that they've agreed to allow the second sentence to be served first. We have the Department of Justice coming in here. When they get up here, I think they're going to say it's fine with us. And they are saying that, Your Honor. But the problem with what they're saying is they're being very careful with their words, and I would expect nothing less from the Department of Justice. But they have explicitly refused to say in their briefing that they are surrendering primary jurisdiction. In fact, if you look at footnote 5 in their brief, they say, we could come and get him anytime we want. Now, I'm paraphrasing there. They say, we choose not to come and pick him up. The primary – the person with primary jurisdiction can reclaim it at any time. That is not a session of primary jurisdiction. Had there been some sort of writing here saying – because right now all we have for an agreement is we have a writ ad prosequendum authorized by Ponzi that says, Mr. Moody, please give him to us. We promise to return him. Mr. Moody gets picked up. The federal government accepts that agreement by providing performance by handing Mr. Moody over. The state does not keep him. Then some sort of detainer is issued by a United States marshal that says, if you're going to release him from your custody, release him to us. It doesn't say anything about we're consenting to permit his sentence to run consecutively. But it also doesn't say the minute you're finished with him and sentence him, send him back to us. No, but they do have an agreement that says that. And then if you look at the – Where's the agreement that says that? It's the writ ad prosequendum. It says we are going to send him back as soon as we are done with him. But isn't your problem that – and I think I agree with you that Mr. Moody has standing. But isn't your problem that every federal court to have faced this issue says that a prisoner in Mr. Moody's scenario does not have a cognizable right to demand which sentence he is going to serve first? And the lower federal courts have done that in the death penalty context, too, not just with terms of years. We have a case, Remeda v. Singletary from 1996, involving a Florida death row inmate seeking his return to Kansas to serve his Kansas life sentence, seeking relief through a writ of habeas corpus. And there's a case from the Ninth Circuit, Poland v. Stewart, an Arizona death row inmate seeking a return to federal custody to serve the remainder of his federal sentence. Pistenbarger v. Grandley from the Seventh Circuit. All of those cases say that there is no cognizable right that a prisoner can enforce. How do you get around that? There's a huge body of case law on that point, and it all, I think, unfortunately for you, goes against Mr. Moody's position. Well, we would note that – and I don't have those cases in front of me right now, but I would note that with regard to this situation, I don't know to what extent they were asserting a residual life interest under the Eighth Amendment. And if you look at Ohio Parole Board v. Woodard, you will see that every justice on the United States Supreme Court, including then-Chief Justice Rehnquist, agreed that a person who has been convicted of and fully adjudicated all habeas issues with regard to the legality of the underlying sentence maintains a residual life interest. Which means he has standing, I think. And I think I agree with you and with the Department of Justice that he has a sufficient stake in the outcome because there's no way you can get around the harm that's going to come from the execution of a capital sentence. But that doesn't mean that it's a legally cognizable interest on the merits. Well, Your Honor, we would just note that at this – I don't know that those courts had before them the argument that I'm making today regarding 3585, regarding whether or not – once a sentence commences, whether or not the executive branch of the United States may interrupt a sentence imposed by the judicial branch of the United States to permit essentially concurrent or some sort of concurrent-type sentence where they say, we're fine to let him go for now and we'll have him back when you all are done with his sentence. And whether or not that permits this. Now, if it turns out that Mr. Moody is indeed right now a federal inmate, which I believe that he is, and I think that the United States has essentially conceded as much by saying we can come and get him whenever we want, what is the purpose of saying they say they're a primary jurisdiction and that they can reclaim him whenever they want and they're choosing not to? Now, if you look at Poland v. Stewart, Poland v. Stewart was a claim raised in a 2254 in which an inmate said, I want you to order the Attorney General to come and get me. And they said, well, we question whether you'd have standing, but we don't have the authority to order the Attorney General to come and get you. What we're asking for here is not that. We're asking for compliance with an existing order, an existing agreement, the only real agreement that we have here that we have information on. What's the enforcement? The enforcement here would be to issue an order, which is what I asked for, to issue an order that Warren Stewart may not execute Mr. Moody because he is still serving a federal sentence in a state in a designated state facility. How is that any different than ordering the Attorney General to come get him? Well, we're not ordering the Attorney General to do anything other than what the Attorney General has already agreed to, which is we will get him back. We're giving Mr. Moody and Mr. Moody was transferred without any process pursuant to a writ ad prosequendum because it was a temporary transfer by its very nature and terms. It was outside the interstate agreement on detainers, so he had no process here. We're saying that there's no process. They've issued this writ prosequendum, which he's not harmed by the writ if he's transported and convicted and sentenced, and then they honor the writ and he's sent back. Right now, we're asking, frankly, where is the agreement from the federal government? An actual agreement, the Attorney General, according to Ponzi, is the one who has the authority to engage in these types of comedy situations. And in terms of the Attorney General. So, the Attorney General can waive the federal government's right to the exclusive custody of the defendant for vindication of its laws? Your Honor, I don't know that he can. Didn't the Fourth Circuit say that in the Nix case, N. Ray Nix, back in 1972, that the Attorney General's sovereignty rights can be waived? Yes, but by whom? It's a question here. Well, Your Honor, I want to just point to the case, to the government's brief, the federal government's brief here. Nowhere on that brief does the name Jeff Sessions appear. That might be because he's accused. He might have a conflict, right? I agree. And had his name appeared, I would have made hay about that, Your Honor. But what I will say here is that there's no indication that an authority has been designated. And all that we have right now regarding Mr. Moody is a statement that we don't want to come get him back. They don't say we won't take him back. They don't say he's not serving his federal sentence right now. They just say, eh, we're going to acquiesce in this. And who is saying it? We don't have anybody. We don't have Mr. Rosenstein or some lower-level person who has been delegated that authority. So you're saying that there's sort of a gap with regard to the government's consent? Well, so far, yes. So far, all that we have right now is something from a United States marshal from the Southern District in terms of an agreement that's other than the writ. We've got this detainer. But the agreement is not enforced. The writ doesn't give you an enforceable right. Well, we would assert that it does, Your Honor. And I would point to Ponzi, and I would note that when you look at Ponzi, which gives the authority to engage in this type of writ behavior, and it's limited because the federal government has no other authority other than what Ponzi says here or any statute here, and they acknowledge there is no actual statute on it. But it says, in such matters, and this is 263, in such matters, he, meaning the Attorney General, represents the United States and may on its part practice the comedy which the harmonious and effective operation of both systems of courts requires. Now, there's a comment here. Provided it does not prevent enforcement of the sentence of the federal courts or endanger the prisoner. We're preventing enforcement of the federal sentence right now, and that violates the comedy to which to the extent that the Attorney General has the ability to do that, this frustrates the execution or the continued service of the federal sentence. And it also endangers the prisoner, but, frankly, it frustrates that. How about, what do you do with, are you aware of the Fifth Circuit's decision in Causey v. Civiletti? I am, and they talk about avoiding piecemeal service of a sentence. Right, but they also say that in that case that the government, the federal government, chose not to force the defendant to serve his initially imposed federal sentence first, and that was the end of the matter, notwithstanding a detainer. Sure. The ruling was that he had no right to command his return to federal custody because the federal government and the state were perfectly free to make any agreement between themselves concerning which of their sentences will be served first. Yes, and I would note that Causey v. Civiletti, the remedy there, if they were to violate it, and I would note that service of the state, that continues in that same paragraph, service of the state sentence first did not hinder Causey from pursuing a federal appeal. They're talking about Causey didn't have any harm there. And the reality is a non-death sentence inmate is not going to suffer any real harm from some sort of an agreement and can't really necessarily raise, say, an Eighth Amendment residual life interest or due process life interest. So in all of these cases, we're talking about someone who's complaining about where they're serving their sentence. They're going to serve ten years here and five years there. It really honestly doesn't matter. It may matter to them that they're not as close to their family as they'd like. But under your interpretation of these two statutes, that would matter. Well, under my interpretation of these two statutes, it would have to matter. Well, you can show an injury. And I don't think that you can show an injury if the end result is going to be the same. In other words, in this case, Mr. Moody, the 400 years will be cut short prematurely if the federal government somehow were to issue an agreement that they do not want to take him back. And so he is suffering an injury. A person who has to serve 15 total years, whether it be seven and a half in one prison or seven and a half in another, honestly it doesn't matter. There's no real harm there that can be redressed because the end result would be you'd be seeking a release of some sort. Here Mr. Moody is seeking to prevent the execution of a sentence that is not yet right. And that sentence is a death sentence. And so I would just note that with respect to those cases, they can be distinguished to the extent that this is a capital case. With respect to the capital cases that this court cited, I would note that Mr. Moody here is asserting that he is in federal custody right now, which is a considerably different claim than the others have made. They were asking to be returned to federal custody. So before you sit down now, let's see if I understand your argument, is that the federal sovereignty can waive its rights to exclusive custody over the defendant, but in this particular case they just haven't done it right. I wouldn't want to go that far, Your Honor, and I don't want to split hairs, but I would say that to the extent that such an agreement can be made in the context of a capital case, to the extent that no process attaches, it would depend on the process there, and to the extent that it doesn't violate separation of powers. Your argument is really that it can't be done in a capital case. If your interpretation of the statute is correct, of both 3585A and 3621B, your argument is that in a capital case it cannot be done, because it will prevent the enforcement and execution of the federal sentence first. I would suggest that that is correct. Right, so it can't be done. There's no agreement that you think is valid in a capital context. If you had the Attorney General of the United States who didn't have a recusal issue sign a formal document, an agreement with the Attorney General of Alabama, that would be invalid in your view. And it can't be done because it would violate the 14th Amendment? Well, I suppose it would violate the 14th Amendment and or the Fifth Amendment, depending on what the agreement said. So, for example, if someone designated by the Attorney General to exercise the comity that may exist there, to the extent it doesn't interrupt the service of a federal sentence, assuming it didn't violate the separation of powers, if a federal executive branch official were to do so, I believe that a person would have a claim that they could bring for a potential civil rights violation, violation of due process rights. Is there some minimal process due in a decision such as this, where the person initially was sent over on one basis and the Attorney General has just decided not to come, not to ask for them back? And we would suggest that given the stakes here, the life interests, that it would be necessary to have some process. It can't be done without notice and an opportunity to be heard? I'm not sure that there would necessarily need to be an opportunity to be heard, but I think there would have to be some channeling of the discretion, given the fact that it involves this. But I also think that there would be a separation of powers issue for the federal government, the executive branch, to cut short a sentence. We would note, Your Honors, that this is a complex issue. The more I look at it, the more complex it gets. The questions that I've heard from you have made it considerably more complex. We would suggest that this court order additional briefing and enter a temporary stay to permit that briefing to occur on the issues that have been raised here and now that we are on the merits. All right. Thank you, Mr. Hines. I apologize for the balance of my time. Thank you. Mr. House. Please, the Court. My name is James House and I represent Warden Cynthia Stewart in this appeal of the dismissal of Walter Leroy Moody, Jr., second or successive habeas petition by the Southern District of Alabama. The warden respectfully requests that this court either deny Moody a COA for the reasons previously submitted in writing or I thought you agreed that our precedent didn't require a COA. You thought our precedent was wrong, but I thought you grudgingly agreed that he wasn't required to get a COA. Right. We also asserted that this court's prior panel precedent should yield to the Supreme Court in the same manner as state courts. Judgment must. However, I don't want to get caught up in To do that in all capital litigation, you want us to just disregard prior panel precedent whenever we think a Supreme Court case might be in some tension with it? When it's directly in conflict with the same procedural facts and posture where the court said if a district court, whether erroneously or not, denies a petition or dismisses a petition for being successive or second, that the ADPA COA requirements are required, yes, Your Honor, I believe that that Supreme Court case actually advocates the In an intervening case, this panel would say in intervening Supreme Court cases abrogated it to the point where we're no longer bound by precedent. The fact that it occurred beforehand when neither party had incentive to seek rehearing because the stay was denied and Mr. Hubbard was executed. Again, slack in this case controls. But as I stated earlier, that's a side issue that we've briefed in writing today. The respondent would like to defend the district court's order, including its determination that Mr. Moody lacked Article 3 standing because we are the only party here who has a voice that is going to take that position. First, the United States does appear prepared to address the prudential standing issue, and that's equivalent with the district court that the warden does not share. However, the warden agrees with the United States that even if this court moved past constitutional standing and reached the prudential standing issue, Mr. Moody would still not be entitled to relief for the reasons that will be discussed by the Department of Justice. You don't think he has Article 3 standing? Correct, and I understood what Your Honor said earlier. Let's go through it. First, he has shown a cognizable injury in fact that he is going to suffer. Agree or disagree? Agree. Okay. He has shown causation.  because Alabama is about to execute him and the federal government hasn't taken him back. Agreed? I agree, but that's why Your Honor is incorrect about Article 3 standing, if I may explain. Really? Agreed so far? Yes, Your Honor. Okay, so he's shown causation. No, Your Honor. Okay, why hasn't he shown causation? Because if you look at Lujan Steel Company in page 72 of the U.S. Reporter for Duke Power Company, the Supreme Court denies the causal connection or describes it as a fairly traceable causal connection and it defines and limits that term as one that cannot be the result of the independent action of some third party not before the court. The Department of Justice's presence here today in its brief is the best evidence of why the district court got it right. To the extent that the court invited the United States to appear because it wanted to hear the United States say whether it consented to Mr. Moody's remaining in Alabama custody in 1998, it did so because the United States is an independent third party who was not before the district court and whose actions are undoubtedly after Mr. Hahn's argument at issue. The government had not put its position in writing at the time the district court dismissed. How could the district court's dismissal order have been correct on the record it had before it? Mr. Moody chose to file a habeas petition against the warden of the Department of Corrections who currently has custody of him. After communicating with the commissioner of the Alabama Department of Corrections, he has never inquired with the Bureau of Prisons. He never inquired his federal status. Even today he said, can the U.S. waive? Can the U.S. make a decision? Those are merits issues. Hasn't the Supreme Court ruled in a case called Bond that you are not supposed to confuse ultimate success on the merits with the standing issue? They have, Your Honor. But the warden of Holman Prison has no say in what the United States does or does not do. He has a say in executing him. But the injury is not the execution, Your Honor. Stop, stop, stop. You're not serious, right? His claim is that if he's executed, he cannot fulfill his federal sentence. And you think the execution is not part of that injury? It may be part of the cause. Think before you answer that question. Your Honor, he is saying that what he wants is to fulfill his federal sentence, but that is the harm to him that if this happens, he doesn't get to fulfill his federal sentence. Because? Because he's executed. Yes. But if he's executed, it's only because the United States chose to let him remain in Alabama's custody in 1998. That goes to the merits. And I think you've got a strong argument on the merits. But that's not standing. You can't conflate the merits with standing. The Supreme Court has said that in Bond with regard to standing, and it said it in Chafin with regard to mootness. Whether or not someone is going to win doesn't affect whether or not they've shown a sufficient concrete interest, so as to have Article III standing. I would ask the court to look at this case through the lens of Lujan, where the person who was sued was the Secretary of the Department of the Interior and not the funding agencies who were supposedly subject to his policies and his regulations. And the court said that those agencies would not be bound by an incidental legal obligation or a ruling that was infidel to the case. And for that reason... What's going to prevent him from serving his federal sentence? The fact that the United States never sent him back. No, no, no. What's going to prevent him from serving his federal sentence? As Your Honor noted earlier, the fact that... That Alabama is going to execute him. Because if Alabama does not execute him, there is a chance that at some point in the future, he may serve his federal sentence. But if Alabama ends his life, there will be no chance for him to do that. But the district court cannot effectuate that with 2241 or 2254. Right, that goes to the merits. Again, the Secretary of the... Even after the U.S. Department of State and AID showed up in Lujan and footnote for it, the court noted that did not retroactively create jurisdiction because you could not give the redress asked for through the Secretary of the Interior. You cannot give the redress asked for through the warden because she does not have the power to make the United States take him back or ask for him back. That's only if you think that effective relief doesn't include telling the warden that she can't execute Mr. Moody. That's ludicrous. Well, it is still company. The court said that the relief requested, the declaratory judgment was worthless, not only to the plaintiff, but it was worthless to the world. In Duke Power Company, the Supreme Court said the plaintiffs believed that their jurisdictional issue arose under 28 U.S.C. 2237, not judging the merits, but looking at the claim and what was alleged, they said that's not true, it's going to be under 2231. In Daimler Chrysler, without judging the merits, the court said, if we strike down the franchise tax credit in the manner that you've asked us to do, we still cannot order a state lawmaker or state legislature to allocate excess tax revenues to your benefit. And since we can't order a state legislature to allocate those tax revenues in that manner, we can never provide you redress. Again, the warden is not the person whose conduct is at issue. When the United States surrendered custody of Mr. Moody in 1998, that was the cause of him remaining with the Alabama Department of Corrections. Undoubtedly, if they had showed up and said we're going to enforce the primary You could have also returned him, right? I believe we would have, Your Honor. What's that? I believe we would have. I thought the writ said to return him. But then the agreement Yes or no. The writ on its face says when you're done with the proceeding, return him. Did it not? It did. And you kept him? We did. Did you get an agreement from the government back then? We did. Where's the agreement? I don't know that there's an agreement in writing, but that is why the detainer was forced to Also, somebody called somebody and told somebody something. Did you allege that below, that there's been an agreement since the 1990s, that you could keep him and execute him? We know the detainer, yes, Your Honor. No. It's not the detainer. The detainer's not an agreement. As the United States admits in their brief, Your Honor, it is in fact evidence of their consent to his remaining in our custody. My question is not about the detainer. The detainer's in the record. Was there an agreement between the state of Alabama and the United States of America that Alabama could keep Mr. Moody and execute him whenever legally feasible to do so? It is my understanding that it did, and that is why the detainer was filed, Your Honor. Okay. But there's no record evidence of that agreement aside from the detainer? Not that I'm aware of. Okay. Now, so, again, if fairly traceable causal connection requires that there be no independent third party not before the court whose action is truly at issue, with all the discussion of whether the BOP can waive or the U.S. Attorney General can do something or the United States government can do something, that is an admission that the United States is the party whose conduct is truly at issue because if they had not waived him, then we would not be here today prior to his execution. So, again, the warden was following a lawful order of the Circuit Court of Jefferson County, and she's currently prepared to follow a lawful order of the Alabama Supreme Court. But unless the United States appears and seeks his return and is willing to accept his return, or if that had happened following his criminal trial, there can be no relief to Mr. Moody, and thus there can be no Article III standing. The other issue is redressability. Without conflating the merits of the case with redressability, the outcome is still dictated that if this court cannot order the United States or the state of Alabama to exercise its discretion under the rule of comity in a particular manner, then it could never provide redress. So, I mean, it's your position that Mr. Moody has no interest in his own life, even in this remaining week of time before Alabama executes him. He does, but the issue that's actually implicated is the concerns of comity between the United States and the respondent. So even if this court moves to the prudential standing analysis that my friend will address and you talk about alignment of interest, Mr. Moody's interests are not aligned with the United States government. In fact, they're diametrically opposed. Mr. Moody is concerned about his life. He is not, however, concerned about how the rule of comity is carried out between two sovereigns who both possess valid criminal judgments against him. So in that sense, he certainly would lack third-party standing if you got to a prudential analysis. But the question becomes, can a district court order the United States, who is not a party Third-party standing is when you're asserting the rights of a third party against a common defendant, not when you're trying to sue two different defendants. Am I missing something? He's not trying to sue two different defendants. No, no. Third-party standing is a doctrine whereby party A, in order to have a stronger claim, asserts the rights and interests of party B, who's not before the court, in suing party C. That's not the paradigm here, is it? Well, it's similar to powers where he's saying that he's going to represent the United States, the party who, if anyone is going to ask for him to be returned and say that we would like custody of him back, it's going to be the United States. So in that he is taking a position against the warden, he is saying that the warden should return him to the United States, to which the warden says the United States has filed a detainer. He's saying that the warden can't execute him. Well, that's what he would like. You don't have to get redress that is complete, right? There's a case called Chafin in the Hague Convention context. Federal courts order the return of the child overseas. The child goes overseas. The Eleventh Circuit holds that the appeal is moot, by the other parent is moot, because the child is overseas and can't be returned. The Supreme Court reverses and says even if the district court's order of return is ultimately not obeyed, that does not affect the justiciability of the case. You don't have to get relief that is going to be 100% effective to have a justiciable case or controversy. If that were the case, then the only people who have standing are the people who are going to win their case 100%, right? Then you work backwards, and then you say, oh, this party is not going to be able to win on the merits because case law cuts against him or her. He's only going to get 10% of what he wants. Ergo, go backwards and now say he doesn't have standing because he's not going to get all the relief he wants, and therefore he can't show regressibility. That's not the way standing works, I don't think. Except he does not have to be returned to the BOP, or that issue has never been decided. If that relief is granted, it actually does not address the case or controversy, which is whether he should serve the rest of his federal sentence. That is, you're assuming that he has a right to serve the rest of his federal sentence, which is not addressed. I'm not assuming that at all. I've said I think you have a good position on the merits, but the merits are different from the Article III standing inquiry. But how can the warden in a habeas position advocate on behalf of the federal government? I don't speak for the federal government. I think he's asking you to assume Article III standing and then go to the merits. And for the reasons that will be addressed by my colleague, I would say that it would never survive past the prudential standing. And on the merits, in light of the precedent that was discussed earlier, where a prisoner is subject to two valid criminal judgments held between multiple sovereigns, there is no due process right to contest your movement between those sovereigns. And even where a prisoner is held by a single sovereign, there is generally no due process right to contest movement between correctional facilities within that state or without. And then finally, a prisoner has no right to demand that a sovereign exercise its discretion under the Rules Committee in a particular way. So under the precedent both cited in the Respondent's Brief and the District Court's Order, and the fact that the United States here today, the necessary third party who did not appear below, concedes that they have never asked for him back, that they don't want him back, and they've consented to Alabama taking jurisdiction, Mr. Moody would never succeed on the merits. However, if this court does choose to go beyond the constitutional standing issue, for the reasons that my colleague will address, he would still not be entitled to relief under prudential standing grounds. If there are no further questions, the warden asks that this court affirm the judgment of the District Court. Thank you. Thank you, Mr. Outs. We'll now hear from Mr. Pelletier on behalf of the Department of Justice. Mr. Pelletier, you've conceded that Mr. Moody has Article III standing, haven't you? Yes, Your Honor. We agree that he does have Article III standing. There are three components, injury in fact, causation, and redressability. In our view, the injury in fact is his imminent execution. Causation means that there's a causation between the complaint of conduct and the injury in fact, and here the complaint of conduct is that he's not been returned to the custody of the United States, and that's causally connected to the imminent execution and his redressability, and that the relief he asks is effectively to send him back to the United States, which would redress his injury. And that's why, in our view, we've come to the conclusion that he does have Article III standing. Returning to the merits here, the United States took custody of Mr. Moody first for purposes of prosecution before Alabama initiated any prosecution here, and as a result, we obtained primary jurisdiction at that time. What that means is that we gained the discretion to keep custody of Mr. Moody through the exhaustion of our remedies, which would mean through the serving his full sentence, federal sentence, or the United States could elect to turn him over to Alabama for purposes of prosecution and or serving his sentence. It sure looks like the United States expected to get him back. I mean, the order from the Alabama Tenth Judicial Circuit judge says that the conclusion of the hearing, meaning the trial in Alabama, the body of the said LaRoy Moody will be returned to the custody of the United States Marshal. Yes, at the time that we, I guess, honored the writ ad prosequendum, the notion was that he would be returned back to the United States. Now, we had discretion to do that for that limited purpose. We also had the discretion once he was convicted and sentenced in Alabama to turn him over to the custody of Alabama to serve the sentence, and we had done that, and I can say that the United States, the Attorney General, has consented, has agreed to Mr. Moody's custody in Alabama to serve out his Alabama sentence prior to his federal sentence here. And Mr. Hout said there's nothing, no written agreement to that effect. It's just an understanding or? I'm not aware of a written agreement. I'm authorized here to say today that the Attorney General consents and agrees to Mr. Moody's custody in Alabama for purposes of carrying out the Alabama sentence. But do we have anything in the record that reflects that the Department of Justice is surrendering primary jurisdiction in custody over the body of Mr. Moody? Well, I think you can take judicial notice of the United States today representing the agreement, the consent of the Attorney General in terms of what's previously in the record. You're here to speak on behalf of the Attorney General and to surrender primary jurisdiction? Well, just to speak a little bit of a nuance, in the government's view, we gained primary jurisdiction when we first took custody. Once we have primary jurisdiction, we could relinquish custody of Mr. Moody to Alabama for purposes of serving his sentence. In our view, that doesn't necessarily relinquish primary jurisdiction. It relinquishes jurisdiction for the purposes of the scope of what we consent to turn him over to Alabama. But we still maintain primary jurisdiction. We can ask for him back if we want to as a result. We do consent, though, to his, and the Attorney General consents, agrees to his custody in Alabama for Alabama to carry out its sentence. And in our view, you can take judicial notice of the fact that we're representing that to you today. They're making the argument that until primary jurisdiction is waived, then you cannot carry out the execution of the sentence in state court. I think that's their argument. Well, I'm not – the law is that, and as I read Causey, for example, is that the jurisdiction of the sovereign who first obtains custody has primary jurisdiction. And for purposes of comedy, that sovereign has the ability to keep hold of that defendant through service of the whole sentence or turn him over for either temporarily for just for prosecution or for service of the full state sentence. Now, whether you turn that just a consent or waiver of full primary jurisdiction or just a consent to the jurisdiction custody for purposes of carrying out the sentence, I don't think – I think you get to the same place. And, for example, in Causey, this court said – I guess what I'm looking for is something a little stronger than, oh, it's understood between us. We have an understanding. We need something a little more solid than that. Well, I'm saying that the Attorney General agrees to Alabama – consents to Alabama to having jurisdiction over Mr. Moody for purposes of carrying out the sentence. And that's reflected in what? So if we want to write an opinion that says that, we can say we find that it's right here in the record. Where would we go? Well, I think you can take judicial notes of the representations that I'm providing today. Mr. Pelletier, you told us. Well, I don't want to represent the position of the Attorney General on this. What if we hadn't asked you here? Well, I think that you would have the same situation in Causey where this court concluded that a detainer that the federal government lodged with the state was sufficient to reflect in the circumstances of that case that the United States had agreed to the state taking custody for purposes of the defendant serving out his sentence in the state. I think those are the facts in Causey, and the court could have had we not been here today. Is that a death case? That is not, Your Honor. You see, this is a death case now. And so I guess why shouldn't I look for something a little more solid than that? There's no real harm in a non-death case because, you know, you either served your sentence in state custody or you served your sentence in federal custody. This is a little different. The harm is different. Why shouldn't I rely on something a little more solid than that? Well, I agree. In this representation, yeah, we have an understanding. Well, Your Honor, I am authorized to speak as to the position of the Attorney General in this case and that he consents to the custody of Mr. Moody in Alabama. It's in our brief that's in writing that's been reviewed through the Department, and that is the position of the United States. Is that how it's normally done? If there's going to be a waiver of jurisdiction, is that normally how it's done? I can't speak to the normal case. I can say that, for example, I'm not aware of the Poland case there being anything in writing either. I don't think – I think this is a unique situation. I don't think there are – there are no normal practices for what occurred here or what should occur in the future. It's what makes this unique, the fact that once the federal government gave up primary jurisdiction over Mr. Moody and turned him over to Alabama, it turned out that he got a death sentence. Would this case have been treated differently if he had gotten yet another life sentence? Would he have been transferred back to your custody under those circumstances? My understanding is that we would have had a discretion to – I understand you guys. Do you – are you familiar with what the practice is? If we turn him over to a state, gets a death sentence, then we don't ask for him back. If he had gotten a life sentence, then we would have asked for him back. I think it's usual. It's typical that we would take a prisoner back if they have a state or federal prosecution – a state and federal prosecution if we have primary jurisdiction. And there are two prison sentences. And, I mean, if you know – I mean, is the reason why you didn't ask for him back in this case because he got a death sentence in Alabama? I do not know, Your Honor. I mean, how would you find out? The individuals who prosecuted this case are no longer with the department. Yeah, but you're here speaking on behalf of the department. I mean, is that still the way you do things? How would you treat defendants over whom you have primary jurisdiction differently depending on whether they get a death sentence or not once relegated to the state? I think every case is evaluated individually because the exercise of – when we have primary jurisdiction, the United States has discretion, as you know. And the exercise of that discretion, as I understand it, needs to be exercised in every particular case. Why didn't the United States take him back? I mean, as we've discussed, it looked like you were intending on that based on the writ. That was the writ for ad prosequendum, and that contemplated that at the end of the prosecution. Yeah, at the end of the hearing. At the end of the trial. Yeah. At the end of the trial, that did contemplate that he would be returned to federal custody. Do you know why he wasn't? I do not, Your Honor. And as I said, I've inquired as to whether there's files, there's something reflecting that. I cannot answer that question. I don't know the basis for the particular decision that was made at that time. I mean, so this happened now, today, or at least in the last five years. I don't know how long you've been at the department. How long have you been there? Several years, Your Honor. Okay. So it happened during your tenure. I mean, is it a common practice when someone is written over to a state for a trial over whom you have primary jurisdiction? Are people who are sentenced to death treated differently than people who do not get a death sentence in terms of whether you get them back or not? I'm not aware of any kind of practice or procedure or differential treatment. I'm not aware of any case like this other than this case, personally. I don't know of any other case other than the Poland case. It's the only case that I'm aware of in the federal system where a defendant received – where the United States had primary jurisdiction, and then the individual received a death sentence in the state, and then the United States did not take back jurisdiction. You just don't know why. There is one other one. I heard that, Your Honor, and I apologize that I did not come across that. 1941 decision by learned hand on the Second Circuit. You weren't there either. I think the broader point, Your Honors, is that all of these questions are questions of comedy to be worked out between two sovereigns in the exercise of their discretion. And we don't see where that was worked out. I mean, other than you coming here today and saying – The teaching of these cases is that whether it's worked out or not is not a question that you get behind, that the defendant goes into and can inquire into, because, for example, you may have a case where there's disagreement between two sovereigns. If one sovereign wants him back and the other one doesn't want to give him back, that still means the defendant in that case has no basis, has no cause of action to challenge that and to interject himself into that. But he has standing. Article III standing, Your Honor. And now this court, in this area, in articulating this principle of comedy and the fact that a prisoner can't interject himself into these kinds of concerns, has said that the defendant lacks standing. Now, we don't think that's Article III standing. We think it's much better characterized or conceptualized as either some sort of prudential third-party standing or, really, probably even better is a standing along the lines of the way courts use standing when they're referring to the merits of a merits decision. And along the lines of, for example, when courts refer to Fourth Amendment standing or statutory standing, which basically means does the defendant or the prisoner have a cause of action that they can assert? Are there any legal rights that are conferred on them that they can seek to vindicate? And here, over and over again, this court, following the Supreme Court in Ponzi and Morse, and this court and other courts have over and over again said that a prisoner does not have any kind of legally cognizable claim in these circumstances to interject himself, whether there's a disagreement between two sovereigns or whether there's perfect harmony and agreement between two sovereigns. Could you take a moment to address Mr. Moody's argument that, and I know it's partly related, partly independent, but the argument that the federal government is not allowed to permit a federal sentence to be split in this way under 3585A of Title 18? Putting aside for a moment whether or not there's an enforceable right under that statute. I apologize that 3585 was cited in the briefs and I missed it. I'm not familiar off the top of my head with the statute. So I'm not able to provide a view on that or a position. Going back to the merits, you know, we're not questioning your authority to make representations on behalf of the Department of Justice. You're here on behalf of the United States of America. But we want to be sure, we want to make sure that the government's representation that there's been a waiver of its rights to exclusive custody is solid. It's on solid ground because, you know, next Friday it will be too late. And so you're saying on behalf of the United States of America that the government's rights to exclusive custody over Mr. Moody is waived. Is that right? I'm authorized to say that we have agreed and consented to the Alabama taking custody and maintaining custody of Mr. Moody to carry out the capital sentence. And waive any right we have as possessor of primary jurisdiction to his custody right now. Is the Attorney General right now the one making the decision or is there someone underneath him because of a conflict, recusal, disqualification matter? I'm not aware of anything, Your Honor. I've been informed that the Attorney General consented to Mr. Moody's. I know, and my question to you may be an unfair one, but the question is, who is the Attorney General under these circumstances? As far as I'm aware, the Attorney General in these circumstances is Mr. Sessions. Okay. Unless the court has any additional questions, I thank you for inviting the federal government. I hope you mean that. We appreciate you commenting. Thank you. All right. Mr. Hahn, you've reserved some time. I almost want to laugh about the situation here because I feel like I'm in Alice in Wonderland. I watched this court pull teeth with two representatives of executive branches of government to get them to admit or acknowledge something to do with an agreement. The most that we can get out of the federal government today is that this court can supposedly take judicial notice. Now, judicial notice is only for facts, not reasonably in dispute. We don't have to take judicial notice of anything if Mr. Terry says he's authorized to say on behalf of the United States of America that the United States waives whatever exclusive rights it has over the custody of Mr. Moody. And, Your Honor, at the end, when the push was coming to shove, and I thought Mr. Pelletier would give, and I thought that he would, and I thought he was finally going to say we do cede permanently and forever primary jurisdiction over Mr. Moody, he said at this time. It was captured right there at the end, at this time. He still will not say to this court that the federal government has ceded primary jurisdiction over Mr. Moody to the state. But that doesn't matter to you because you think he can't do it anyways. That's what you said in response to a question. I can take alternative positions, Your Honor, and given the limited record that we have here, because nobody has an agreement. I find it incredibly difficult to believe that a man like the one that captured Mr. Moody, and this court's well aware of the facts of this case, having heard his substantive habeas case, is well aware of the record in this case. And the length that the federal government and the state government went to to prosecute Mr. Moody. Thousands and thousands of pages of discovery. Hundreds of agents and dozens of prosecutors were involved in this case. And Mr. Moody gets picked up from federal prison one day, having executed, having assassinated a federal judge. And the federal government sends him along and never comes and gets him. And not only do they never come and get him, but they never say we don't want him back ever anywhere. Maybe the reason why nothing happened over a course of years is that everybody was happy with the status quo. Mr. Moody was not dissatisfied with the status quo, given what had happened. He was perfectly content, as content as you can be. But to be there while nothing was happening and while no death warrant was in place, he didn't make a complaint earlier than a month ago. The federal government didn't have any reason to get him back because he's serving a life sentence. He would have served a life sentence and somebody else is paying for his custody and his upkeep. And Alabama doesn't want to let go of him because they may need him at some point in the future to carry out their execution. So everybody is perfectly content under the circumstances to let things stay as they are. And now we're litigating this issue 20 something years later. And, Your Honor, Mr. Moody was never given notice of the fact that the federal government had apparently waived. Mr. Moody, the first notice Mr. Moody had that he was no longer in federal custody and that that writ was apparently no longer valid, was when he was told the day after the Supreme Court of the United States denied cert on his 2254 on state court that he was going to be executed. And at that point he realized, I'm not in federal custody. I'm not subject to this writ anymore. Something's going on. I immediately reached out to the Department of Corrections and said, can you please tell me why Mr. Moody isn't being returned to the federal government? I'm not blaming him for the delay. I'm just saying that that might be an explanation why nothing happened over the course of 20 years. That would explain why there's no paperwork, no nothing. You would think that a federal prisoner who was the subject of such a manhunt, who was sentenced to seven life sentences and 400 years and then committed to serve that sentence and began serving that sentence, that he would just not walk out of the federal prison with a couple of agents in the state of Alabama and never return without any paperwork. But if you were bringing this claim and it were a case of first impression, these are really hard and complex issues. They still are. But you have a case from our circuit, Remeda, which involves the exact same circumstances, except it doesn't involve the federal government, but it involves two states. A guy who received a non-death sentence in Kansas, charged and sent over to Florida on a capital murder charge, convicted and sentenced to death in Florida, and he files a writ of habeas corpus, saying Florida can't execute me because I need to be back in Kansas serving my Kansas sentence. In that case, this is a quote from Remeda, we do not know whether Kansas is currently seeking Remeda's return to serve the remainder of his sentence. Notwithstanding that lack of knowledge and ambiguity, we said that Mr. Remeda did not have a cognizable right that he could enforce to prevent his execution by Florida. I don't see how you can get around that case. It's not from another circuit, it's from our circuit. And I just don't see how you get around that case when it holds that there's no cognizable right that the prisoner can enforce under those circumstances. Well, I don't know, Your Honor, that Ponzi, since we're talking about cases, proceeding cases from the 11th Circuit or 5th Circuit, that may somehow call into question cases that were issued after the Supreme Court cases with regard to the certificate of appealability. I would say that Ponzi is clear. Ponzi says it works no injury to the prisoner to do this, and the way that we ensure that it works no injury to the prisoner is that the second sentence is served second. Here, Mr. Moody is serving a federal sentence. At the very least, there's a significant likelihood of success in establishing that, that he is currently serving a federal sentence. Now the question becomes, and I don't know, Remeda wasn't dealing with the federalism concerns that we have here. You're right. It was a state versus state issue, not a federal government versus state issue. And here we're dealing with federalism issues. We are dealing with whether or not the courts of the United States can have their sentences altered by the executive branch of the United States. So if they had wanted to shorten Mr. Moody's sentence, they would have had to go into federal court and say, Your Honor, please shorten Mr. Moody's sentence. Mr. Sessions can't go in and say, you know what, there's a guy who's serving a 20-year sentence right now. Maybe Governor Siegelman. Someone can't go in and say, Governor Siegelman's serving a long sentence. I feel like he's a good guy. The judge gave him five years. I'm going to knock a year off his sentence and send a note to the warden and say, let Mr. Siegelman go. No, but he can say, send Mr. Siegelman to Alabama where he has state charges pending and let him serve part of his sentence there before he comes back here to finish out his term. Could he not do that? I do not believe that he could. And at this point, Your Honor, I would like to, before we get. So, again, going back to your position, and it's a hard line you're taking, and I understand why, that the federal government cannot, written agreement, express agreement or not, simply cannot do what the United States is attempting to do here. Correct, Your Honor. But with regard to assuming that it could, because I don't want to foreclose an argument that I could. No, I know. That's your best argument, right? And then you have an alternative argument beneath that. Yes, Your Honor. I would note that almost every case, and I have not read Remeda recently, but I would argue that most every case, when they talk about the order, no standing to challenge the order in which sentences are executed, all of those cases involved a writ, person was sent over. They started with a state sentence or a federal sentence, vice versa. They were sent over. The federal government or the state who got them on the writ prosecuted them, obtained a sentence, did not execute that sentence, sent them back. That's the difference. There is a difference here because executing the sentence, and when you look at 3585, and I got notice yesterday morning that we were going to be talking about the merits, and I apologize to Mr. Pelletier for coming out with 3585 here today and not having a copy for him. But I would note that given the fact that it now appears that Mr. Moody is in federal custody, does he have a cause of action? I think today they have admitted that he has a cause of action, at the very least, against Attorney General Sessions. And I don't want to – I'm not – Let me read to you what the Seventh Circuit said in Jeter v. Cohan. If there's a dispute whether an individual should be in the custody of either the state or the federal government, that dispute is between the two sovereigns. An individual who has violated the laws of two or more sovereigns may not complain of the order in which he is to serve the various sentences. So I guess in this case, and many of the other cases cited in your brief, courts have come to the conclusion that as far as which sentences to be served first, regardless of whose custody you're in, it's a matter of comedy between the two sovereigns. Well, I would note, Your Honor, that Ponzi talks about as long as it doesn't frustrate the federal sentence. And certainly here it would frustrate the federal sentence. Mr. Ponzi was in federal custody serving a federal sentence. And that is the baseline case here. And everything else is a gloss on Ponzi. Yeah, well, this case doesn't say as long as it doesn't frustrate the federal sentence. No, but that's a Seventh Circuit case, and it's not a United States Supreme Court case. And I would suggest that when we're looking at a case, especially a case like this, where a life is at stake, and it's considerably different than most cases other than maybe Remeda, and there is this question of separation of powers in various aspects. I'm just – I was sitting over there at a loss because I heard that there were, quote, no normal practices on the part of the Attorney General's Office for these. There was – he was authorized. By whom? He said apparently Mr. Sessions has passed on this. And, I mean, I'm just – I'm at a loss here to determine how Mr. Moody is, especially when we're here at the pleading stage, addressing the merits. And I appreciate the court taking the merits because I think the court may have anticipated a stay motion at some point, given that the district court would not regain jurisdiction if we were to prevail on the – regain the jurisdiction it didn't think it had if we prevailed on the subject matter jurisdiction issue because the mandate would have to issue. But given the short timing on this and given the fact that Mr. Moody is just now learning today that there is apparently an agreement, whether enforceable or not, an issue that needs to be fleshed out, especially given a life, I would move at this time – I would make – I don't even know if I can do this. I would make an oral motion under 2241A for this court to issue a conditional writ of habeas corpus because Mr. Moody's due process rights, his limited due process right to life, has been violated by the admitted here – admitted lack of any standards whatsoever. Every Supreme Court justice in Ohio Adult Parole Board versus Woodard said there is a residual life interest and some processes do, and that was with regard to executive clemency. Here we're not talking about executive clemency. We're talking about an interaction of a federal statute that implicates separation of powers. If you want to make a motion, you've got time to make it in writing. I will make it in writing. But given the stakes here, I guess I'm putting the federal government on notice that I will make a petition against Attorney General Sessions and any of his agents on this. I would note that Judge Martin asked about any other circumstances in which this has happened. Terry Nichols. It's outside the record, but if you were to – Terry Nichols was the other bomber involved with the Oklahoma City. Mr. Nichols was written over. He was not given a death sentence. By then, the federal government had reinstated the death penalty, and he got an 11-to-1 verdict that said death, but in the federal system, you're entitled to unanimity or you get life without. The state of Oklahoma was not happy with that, and so they got a writ. They got him on a writ ad prosecondum and sent him over. Oklahoma Jury, 11-to-1, recommended death. Oklahoma requires unanimity. Immediately, as soon as the appeals window closed, the government of the state of Oklahoma returned him to the federal government. This is a situation where they are essentially backdooring a federal death penalty ex post facto. They could not have gotten a death penalty for Mr. Moody. They could not have gotten him the death penalty, the federal government, and now Mr. Sessions, who happened to have been the prosecutor on this case, his office, he was in charge, he was there. He had not been elected Senator Sessions. The morning of his election to the United States Senate, his attorneys were in court having the death sentence pronounced on Mr. Moody, his attorney general office, his people. And here we have saying that Mr. Sessions is consenting to this death sentence. Great. Where is Mr. Moody's process? Has Mr. Moody shown a significant likelihood of success in the merits as to his federal custody status claim to? We would submit that he has. We would submit that I don't think most people could dispute that he has an injury, that there is an injury that will be unremediable by 6 p.m., shortly after 6 p.m. one week from today. If this court does not grant a stay and permit additional briefing, or if this court does not grant relief that permits this to occur, I will be witnessing Mr. Moody executed at 6 p.m. next Thursday. And given the stakes here, given the late disclosure of this agreement, we say that the equities lie in favor of granting a stay to Mr. Moody so that we can further explore this issue that I think everybody agrees is a grave issue, a grave concern about which we know very little. All right. And before we conclude, I'm going to Mr. Pelletieri on behalf of the panel. We'd like to have you file something that we can, in the record, something that will assure us that the Attorney General or his delegate is consenting to the release of exclusive custody over Mr. Moody to the State of Alabama for execution. How quickly do you think you could have that in light of the schedule? All right. Well, I'm going to ask that you file it by the close of business on Monday. All right. Court is in recess until 9 o'clock tomorrow morning. Thank you.